UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER LOCKHART                                                                                           PLAINTIFF

v.                                              No. 5:22-cv-05040

SILOAM SPRINGS, ARKANSAS; JAMES
WILMETH, individually and in his official
Capacity as Police Chief of the Siloam Springs
Police Department; ALLAN GILBERT, in his
official capacity as Police Chief of the Siloam
Springs Police Department; ZACHARY WARE,
individually and in his official capacity as a Police
Officer with the Siloam Springs Police Department;
CHASE FINE, individually and in his official
capacity as a Sergeant with the Siloam Springs
Police Department; TIFFANY ADAMS, individually
and in her official capacity as a Sergeant with the
Siloam Springs Police Department; MIKE EFRAM,
individually and in his official capacity as a Corporal
with the Siloam Springs Police Department; DAVID
BAILEY, in his official capacity as Prosecutor for
Siloam Springs, Arkansas                                                                                        DEFENDANTS

**OPINION AND ORDER**

Before the Court is Defendants' motion for summary judgment (Doc. 30), brief in support (Doc. 31), and statement of facts (Doc. 32). Plaintiff Christopher Lockhart filed a response to the motion (Doc. 42), response to the statement of facts (Doc. 41), and counter-statement of facts (Doc. 43). Defendants also filed a reply (Doc. 46) in support of their motion. For the following reasons, the motion for summary judgment will be GRANTED IN PART and DENIED IN PART.

**I.      Background**

The case arises from a traffic stop. At 3:30 AM on March 11, 2019, Christopher Lockhart drove east along Highway 412 in Siloam Springs, Arkansas. (Doc. 43, ¶ 11). It was a dark and rainy morning. *Id.* Defendant Zachary Ware, a Siloam Springs Police Officer, noticed a car going

about 10 miles per hour slower than the speed limit. (Doc. 41, ¶ 107). Officer Ware turned his police car around and began following the car. (Doc. 32-2, 0:06–0:11).[1] According to Officer Ware, the car was not traveling in the proper lane of the road. (Doc. 41, ¶ 107). Officer Ware's dashcam picks up the scene from there. *See* Doc. 32-2.

Officer Ware followed Mr. Lockhart for three minutes before initiating a traffic stop. *Id.* During those three minutes, the video shows Mr. Lockhart's car driving slowly along the highway. *Id.* Mr. Lockhart's car weaved slightly within its lane. *Id.* at 1:25–1:27, 2:15–2:20. Again, it was rainy, and Officer Ware was using his windshield wipers. *See, e.g., id.* at 0:16, 0:28, 2:35–2:45. About a minute after he began following Mr. Lockhart, Officer Ware said over the radio that "if another unit wants to start my way, I'm going to initiate here in a moment. 412 and Washington going eastbound. Going to be for careless driving, weaving in its lane. We've been going probably about 35 in a 45 for a while." *Id.* at 1:44–2:01. Roughly one minute later, Mr. Lockhart reached a curve in the highway. As he negotiated the curve, his car's driver's side tires touched the dotted yellow line between the two eastbound lanes and the center turn lane. *Id.* at 3:00–3:10. The parties dispute whether Mr. Lockhart fully crossed the line. The dashcam's shot was obscured by rain and lights at that moment and does not clearly show whether Mr. Lockhart crossed the line.

Officer Ware testified that Mr. Lockhart crossed the line. (Doc. 32-3, p. 27:23–24).[2] After passing through an intersection, Officer Ware turned on his lights and initiated a traffic stop. (Doc. 32-2, 3:21). The traffic stop was recorded on both Officer Ware's dashcam and Defendant Mike Efram's dashcam when Officer Efram arrived to support Officer Ware. *See id.*; Doc. 43-5. After

---

[1] Doc. 32-2 is Officer Ware's dashcam video. The Court will refer to the specific timestamps from the video.

[2] Throughout this Opinion and Order, the Court will use a deposition's internal page and line numbering.

2

Officer Ware stopped Mr. Lockhart, Officer Ware spoke with Mr. Lockhart while Mr. Lockhart remained in the car. Doc. 32-2, 04:31–10:15. Officer Ware then asked Mr. Lockhart to step out of the car. *Id.* at 10:20. Officer Ware had Mr. Lockhart complete various field sobriety tests. *Id.* at 12:10–24:13. According to Officer Ware, Mr. Lockhart showed 14 out of 18 indicators of being impaired. Doc. 32, ¶¶ 42, 57, 69.

Officer Ware arrested Mr. Lockhart on suspicion of driving while intoxicated because Officer Ware concluded that Mr. Lockhart was impaired. *See* Doc. 32-2, 24:18–24:36; *see also* Doc. 41, ¶¶ 70–71. Because Mr. Lockhart is tall, Officers Ware and Efram adjusted Mr. Lockhart by pulling him across the back seat of Officer Ware's patrol car while he was handcuffed. (Doc. 41, ¶ 71). Mr. Lockhart said that the handcuffs cut him on his wrist. *Id.* ¶ 73. Mr. Lockhart later testified that he never saw a doctor about this injury. *Id.* After arresting Mr. Lockhart, Officer Ware searched Mr. Lockhart's car and then released it to Mr. Lockhart's coworker Kim Proud, who was following Mr. Lockhart's car and stopped behind the officers during the traffic stop. (Doc. 10, ¶¶ 67, 72). Officer Ware finally drove Mr. Lockhart to the Siloam Springs police station. (Doc. 32-2, 49:29–53:00).

At the police station, Officer Ware conducted a blood alcohol concentration test and a urine test. (Doc. 32-3, pp. 52:20–53:15). The result of Mr. Lockhart's blood alcohol concentration test was 0.00. (Docs. 32-1, p. 8; 32-3, p. 24). Officer Ware also consulted Detective Tiffany Adams, a drug recognition expert with the Siloam Springs Police Department. (Doc. 41, ¶ 101; Doc. 43, ¶ 47). Detective Adams also put Mr. Lockhart through a series of sobriety tests. *See* Doc. 32-8, pp. 17:6–23:20; Doc. 43, ¶ 47. After the tests, Detective Adams determined that Mr. Lockhart was a "medical rule out." (Doc. 41, ¶ 146; Doc. 43, ¶ 47). A "medical rule out means the symptoms or driving that were seen were attributed to medical conditions and not impairment." (Doc. 41,

¶ 147). Detective Adams does not know if officers use her opinion in an ultimate arrest or charging decision. *Id.* ¶¶ 148–49. After the testing finished, Officer Ware charged Mr. Lockhart with two traffic violations and driving while intoxicated. (Doc. 31-1, pp. 1, 12; Doc. 41, ¶ 157; Doc. 43, ¶ 52). Officer Ware prepared an incident report with a narrative of the stop, testing, and arrest. *See* Doc. 32-1, pp. 4–11. Detective Adams prepared a supplemental narrative as the drug recognition expert. *Id.* at 14–17. Sergeant Chase Fine approved the report. *Id.* at 1.

Defendant David Bailey was the prosecutor responsible for Mr. Lockhart's case. Mr. Bailey first tried to broker a deal in which Mr. Lockhart would plead guilty to the traffic charges in exchange for dropping the DWI charge. (Doc. 43, ¶ 53). Mr. Lockhart refused the deal. *Id.* Mr. Bailey then dismissed the traffic charges and went to trial on the DWI charge. *Id.* ¶ 54. At trial, although he lacked the authority to directly dismiss the DWI charge, Mr. Bailey decided to effectively dismiss that charge by not putting on any evidence. (Doc. 46-1, p. 2). Mr. Lockhart was then found not guilty of the DWI. (Doc. 43-3). Mr. Bailey stated that he discarded the case file on the same day the case was resolved (June 18, 2019), then recreated the file after the present litigation began. Doc. 43-4.

Mr. Lockhart sued Defendants, alleging claims of deprivation of his constitutional rights under 42 U.S.C. § 1983, civil conspiracy under 42 U.S.C. § 1985, violation of the Arkansas Civil Rights Act, and the state torts of abuse of process and malicious prosecution. *See* Doc. 2. He sued Siloam Springs, Chief James Wilmeth, Chief Allan Gilbert, Officer Ware, Officer Efram, Sergeant Fine, Detective Adams, and Mr. Bailey in their official capacity. He also sued Wilmeth, Ware, Efram, Fine, and Adams in their individual capacity.

## II.  Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden to show that there is

no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159 (1970)).

**III. Analysis**

Defendants seek summary judgment on all claims. Defendants argue they did not violate Mr. Lockhart's rights, and alternatively, if his rights were violated, that Defendants are entitled to qualified immunity. Qualified immunity protects officers "unless: (1) [they] violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable officer would know of the right at the time of the alleged violation." *Garcia v. City of New Hope*, 984 F.3d 655, 663 (8th Cir. 2021), *abrogated in part on other grounds by Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023) (quoting *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019)). The Court can address the two prongs of qualified immunity in any order. *Livers v. Schenck*, 700 F.3d 340, 350 (8th Cir. 2012) (citing *Pearson v. Callahan*, 555

U.S. 223, 236 (2009)). The Court will address Mr. Lockhart's claims in turn.[3]

### A. Section 1983—Failure to Train or Supervise

Mr. Lockhart alleges that Siloam Springs, Chief Wilmeth, and Chief Gilbert failed to train or supervise their employees, namely Ware, Efram, Adams, and Fine. (Doc. 2, ¶¶ 139–44). Mr. Lockhart sues Chief Wilmeth in his official and individual capacity, but only sues Chief Gilbert in his official capacity. Suing a public official in their official capacity is "actually a suit against the entity for which the official is an agent." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (quoting *Elder–Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)). Therefore, the claims against Chiefs Wilmeth and Gilbert in their official capacities are suits against Siloam Springs. The Court will first address Siloam Springs' official liability and then Chief Wilmeth's individual liability.

#### i. Official Capacity—Siloam Springs

Siloam Springs can only be liable "where the municipality itself causes the constitutional violation." *Perkins v. Hastings*, 915 F.3d 512, 520–21 (8th Cir. 2019) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Therefore, Mr. Lockhart must identify a specific Siloam Springs "policy" or "custom" that caused his injury. *Id.* at 521 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). Mr. Lockhart does not identify a written policy, but states Siloam Springs has unconstitutional customs or practices. (Doc. 42, p. 19). Specifically, Mr. Lockhart argues Siloam Springs has an unconstitutional practice which prevented the supervising officers from intervening and directing Officer Ware to release Mr. Lockhart without ticketing him. *Id.* at 21.

Mr. Lockhart fails to point to evidence showing a widespread custom. A custom not

---

[3] The parties agree that Mr. Lockhart's Arkansas Civil Rights Act claims require the same analysis as the section 1983 claims, so the Court will not separately address the Arkansas Civil Rights Act claims unless necessary.

formally approved must be so widespread as to have "the force of law" to subject a municipality to liability. *Perkins*, 915 F.3d 521 (quoting *Brown*, 520 U.S. at 404). Mr. Lockhart claims that there is a custom of not allowing officers to intervene in cases of misconduct with arrests, such as by preventing supervisors from intervening to release Mr. Lockhart in these circumstances. However, Mr. Lockhart does not cite any evidence showing such a custom, only providing evidence about his stop and arrest. That is insufficient to show "a pattern of widespread and pervasive unconstitutional conduct." *McReynolds v. Schmidli*, 4 F.4th 648, 656 (8th Cir. 2021) (citing cases holding two instances of unconstitutional conduct does not establish the required pattern of conduct). Siloam Springs is not liable under this theory.

"Governmental liability on the theory of failure to train or supervise is an extension of claims challenging a municipality's unconstitutional policy or custom." *Meyer v. Herndon*, 419 F. Supp. 3d 1109, 1120 (S.D. Iowa 2019) (citing *Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018)). To show Siloam Springs is liable for its failure to train or supervise Officer Ware, Mr. Lockhart must show "(1) the [city's] . . . training practices [were] inadequate; (2) the [city] was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by [the city]; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury." *Parrish*, 594 F.3d at 997 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). Failure to supervise and failure to train claims require the same analysis. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013). In both circumstances, Siloam Springs must have known "that its procedures were inadequate and likely to result in a violation of constitutional rights." *Parrish*, 594 F.3d at 998 (quoting *Andrews*, 98 F.3d at 1076).

The Eighth Circuit has previously affirmed dismissal of failure-to-train claims when an

officer received two weeks of on-the-job training and attended the police academy within one year of employment. *Andrews*, 98 F.3d at 1076–77. Here, Mr. Lockhart admits that Officer Ware attended the Arkansas Law Enforcement Training Academy (ALETA) in 2019,[4] *see* Doc. 59, ¶ 159, and Mr. Lockhart does not point to any other evidence that shows Officer Ware's training was inadequate. Moreover, the specific ALETA training Officer Ware attended has been found to be sufficient training absent any evidence disputing that training. *See Smith v. Watkins*, 159 F.3d 1137, 1139 (8th Cir. 1998); *Ulrich v. Thornton*, 2012 WL 1933078, at *3 (W.D. Ark. May 29, 2012). Therefore, Mr. Lockhart has not shown that Officer Ware's training was inadequate.

Mr. Lockhart would also need to show that Siloam Springs was deliberately indifferent to the rights of others. *Parrish*, 594 F.3d at 997. "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson*, 709 F.3d at 1216 (citing *Brown,* 520 U.S. at 409). When a plaintiff does not submit evidence of the defendant's, or any other officer's, earlier constitutional violations, there is no dispute of material fact. *See id.* Here, Mr. Lockhart has not cited any evidence showing Siloam Springs knew there was a threat to the rights of others. Without this evidence, no reasonable juror could conclude that Siloam Springs was deliberately indifferent to the rights of others.

Finally, Mr. Lockhart cites testimony from Chief Gilbert that states officers cannot break traffic laws to investigate traffic violations, but Mr. Lockhart does not explain how any supposed deficiency in training on that topic caused his injury. Because Mr. Lockhart does not claim Siloam Springs directly inflicted the injury, the causation standard for element three is "a 'rigorous' one." *Parrish*, 594 F.3d at 1000 (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir.

---

[4] According to Defendant Chase Fine, the ALETA training is 12 weeks long. (Doc. 32-7, p. 9:5–6).

8

2007) (en banc)). In other words, "'the identified deficiency in [the city's] training program . . . [must] be closely related to the ultimate injury.'" *Id.* (quoting *Andrews*, 98 F.3d at 1076). Mr. Lockhart has not pointed to any evidence that causally connects any alleged deficiency in training to the cause of Mr. Lockhart's injury. Thus, he has not established a question of fact for a jury to consider. *See id.* Mr. Lockhart has not raised a genuine dispute of fact on any of the three elements for his claim, so Defendants are entitled to summary judgment on the official capacity failure to train or supervise claim.

### ii. Individual Capacity—Chief Wilmeth

To prove Chief Wilmeth is individually liable for failure to train or supervise under section 1983, Mr. Lockhart must show Chief Wilmeth "(1) had 'notice of a pattern of unconstitutional acts committed by subordinates'; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take 'sufficient remedial action'; (4) proximately causing injury to [Mr. Lockhart]." *Sturgeon v. Faughn*, 36 F.4th 804, 809 (8th Cir. 2022) (quoting *Livers*, 700 F.3d at 355). Defendants assert that Mr. Lockhart cannot point to any evidence that shows Chief Wilmeth knew about a pattern of unconstitutional acts committed by Officer Ware. Indeed, Mr. Lockhart did not cite any such evidence. Moreover, Mr. Lockhart admitted that Officer Ware completed the ALETA training, which, just as with the official liability claim, is sufficient to show that Officer Ware was trained. *Cf. Andrews*, 98 F.3d at 1078 (dismissing individual capacity failure-to-train claim when official capacity claim failed because the defendant's training was adequate). For these reasons, the Court will grant summary judgment on Mr. Lockhart's individual capacity claim against Chief Wilmeth.

### B. Section 1983—Illegal Stop and False Arrest

Mr. Lockhart alleges Officer Ware conducted an unreasonable stop and falsely arrested

him. (Doc. 2, ¶¶ 145–48). Traffic stops are seizures under the Fourth Amendment, so they "must be supported by reasonable suspicion or probable cause." *Garcia*, 984 F.3d at 663 (quoting *United States v. Hollins*, 685 F.3d 703, 705–06 (8th Cir. 2012)). When an officer has probable cause to believe a traffic violation occurred, the stop is "constitutionally reasonable." *Id.* (quoting *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017). This is true even if the violation is a minor one, and regardless of an officer's ulterior motive. *Id.* at 664 (quoting *Johnson v. Crooks*, 326 F.3d 995, 998 (8th Cir. 2003)).

Officer Ware asserts he had probable cause to stop Mr. Lockhart for two driving violations: Careless Driving (Ark. Code Ann. § 27-51-104) and Driving Left of Center (Ark. Code Ann. § 27-51-301).[5] Alternatively, Officer Ware asserts he was justified in stopping Mr. Lockhart on suspicion of driving while intoxicated. Most of Officer Ware's arguments focus on what he states is undisputed video evidence that Mr. Lockhart crossed the solid yellow centerline of his lane, violating Ark. Code Ann. § 27-51-301. Mr. Lockhart disputes this fact, arguing that he did not cross the yellow line. The Court agrees with Mr. Lockhart and finds there is a genuine dispute of fact as to whether Officer Ware had probable cause.

The facts here are like those in *Garcia*, 984 F.3d at 664. There, an officer said the plaintiff's license plate was covered, a traffic violation under Minnesota law. *Id.* The plaintiff disagreed. The officer relied on video footage that she said showed the license plate was covered. *Id.* But "the video remain[ed] too blurry to establish whether [plaintiff's] license plate was covered." *Id.* The Eighth Circuit explained those facts presented a circumstance wherein viewing the evidence in the light most favorable to the non-movant meant accepting the plaintiff's versions of facts.

---

[5] Defendants switched the Arkansas code section numbers for the two violations. (Doc. 31, p. 7). The Court uses the correct code sections.

10

Accordingly, the Eighth Circuit reversed the district court's grant of qualified immunity because there was a genuine dispute of fact as to whether the officer had probable cause. *Id.* at 667.

The same reasoning applies here. Both parties rely on Officer Ware's dashcam video. The Court has reviewed the relevant portions of the video, *see* Doc. 32-2, 2:45–3:15, and concludes that this video is unhelpful because it is obscured by the rain and light. Thus, the Court is left with the parties' competing versions of the facts. Officer Ware contends Mr. Lockhart clearly crossed the line; Mr. Lockhart contends his tires only briefly touched the line. At the summary judgment stage, it is not appropriate for the Court to resolve this disputed factual issue. *Garcia*, 984 F.3d at 666 (quoting *Henderson v. City of Woodbury*, 909 F.3d 933, 940 (8th Cir. 2018)). In sum, there is a genuine dispute as to whether Officer Ware had probable cause to stop Mr. Lockhart for driving left of center.

This finding also disposes of Officer Ware's argument that Mr. Lockhart engaged in careless driving. Officer Ware said Mr. Lockhart was careless for swerving and crossing the centerline. As discussed above, the record is not clear on whether Mr. Lockhart crossed the centerline. And swerving appears to be too strong a word to describe Mr. Lockhart's driving in the beginning part of the video. *See* Doc. 32-2, 0:00–3:00. Further, under the careless driving statute, weaving in one's lane is not failing to maintain control. *Barrientos v. State*, 39 S.W.3d 17, 21 (Ark. Ct. App. 2001) (citing Ark. Code. Ann. § 27-51-104). Therefore, the Court also finds there is a genuine dispute of fact as to whether Officer Ware had probable cause to stop Mr. Lockhart for careless driving.

Finally, Officer Ware argues that even if he did not have probable cause to stop Mr. Lockhart for violating the two traffic statutes, he had a reasonable suspicion that Mr. Lockhart was driving while intoxicated. (Doc. 31, p. 7). "When evaluating the validity of a traffic stop, we

11

consider 'the totality of the circumstances . . . [and] the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Duffie v. City of Lincoln*, 834 F.3d 877, 883 (8th Cir. 2016) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Officer Ware relies on two Arkansas state court cases where the court found an officer had reasonable suspicion to stop a driver for driving while intoxicated. *See Hoay v. State*, 55 S.W.3d 782 (Ark. Ct. App. 2001); *Piercefield v. State*, 871 S.W.2d 348 (Ark. 1994). In both those cases, however, the evidence showed that the drivers either weaved from the centerline of the highway to the shoulder or crossed both the centerline and the fogline. *Hoay*, 55 S.W.3d at 784; *Piercefield*, 871 S.W.2d at 351. The Arkansas Court of Appeals has already explained that *Piercefield* "does not support the State's argument that a car weaving between the boundaries of its designated lane on a multi-lane highway, combined with an officer's concern that the driver might be sleepy, constitutes probable cause to stop." *Barrientos*, 39 S.W.2d at 21.

The facts here are different from the cases Defendants rely on. The Court explained above that there is a dispute of fact as to whether Mr. Lockhart crossed the centerline. Moreover, Officer Ware's other explanations do not show he undisputedly had reasonable suspicion to stop Mr. Lockhart. At the time he started following Mr. Lockhart, Officer Ware said that Mr. Lockhart had not committed a violation. (Doc. 32-2, 22:11). Officer Ware testified that he had had reasonable suspicion because he estimated that Mr. Lockhart was driving 10 miles slower than the speed limit. *Id.* at 22:24–23:1. Officer Ware called this "extremely slow" despite the rainy conditions. *Id.* at 23:13–15. Officer Ware also testified that it is not against the law to drive 10 miles below the limit, and it also not against the law to weave within one's lane. *Id.* at 25:13–19. In these circumstances, there is "not sufficient information to create reasonable suspicion of criminal

activity." *See Duffie*, 834 F.3d at 884 (no reasonable suspicion for traffic violation when defendant admits plaintiff did not violate traffic laws and relies on an incident report without enough information to create reasonable suspicion).

Because the Court finds there is a dispute of facts over whether Officer Ware committed a constitutional violation, Mr. Lockhart can overcome qualified immunity by showing his right was clearly established. *Garcia*, 984 F.3d at 663. Defendants argue "there is no factually similar case which clearly establishes that any individual Defendants' actions in these circumstances violated the constitution." (Doc. 31, p. 16). The Court disagrees. A Fourth Amendment right to be free from unreasonable searches and seizures was clearly established when Officer Ware stopped Mr. Lockhart. *See Garcia*, 984 F.3d at 667. That right requires traffic stops to be supported by reasonable suspicion. *See id.* (citing *Duffie*, 834 F.3d at 884). With a dispute of fact as to whether Officer Ware violated Mr. Lockhart's clearly established Fourth Amendment rights, Officer Ware is not entitled to qualified immunity on the illegal stop and false arrest claims.

### C. Section 1983—Excessive Force

Mr. Lockhart alleges Officers Ware and Efram used excessive force when arresting him, putting him in the back of Ware's police car, and transporting him to the Siloam Springs Police Department. (Doc. 2, ¶¶ 149–53). "To show excessive force, a plaintiff 'must demonstrate a seizure occurred and the seizure was unreasonable.'" *Cravener v. Shuster*, 885 F.3d 1135, 1138 (8th Cir. 2018) (quoting *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003)). Courts use many factors when determining the reasonableness of a seizure, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff

was actively resisting." *Id.* at 1138–39 (quoting *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017)).

Some factors support Mr. Lockhart. The dashcam videos show that he was not resisting Officer Ware throughout the field sobriety tests. *See* Docs. 32-2, 43-5. And reasonable jurors could find that Mr. Lockhart did not pose a security problem or threat because of his compliance. But the other factors—extent of injury and amount of force used—weigh strongly in favor of Officers Ware and Efram. In total, Mr. Lockhart has not presented evidence that a reasonable jury could find demonstrates excessive force.

Mr. Lockhart alleges that Officers Ware and Efram used excessive force when they arrested him, placed him in handcuffs, and placed him in Officer Ware's patrol car rather than Officer Efram's SUV. "Handcuffing inevitably involves some use of force and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (citation and quotation omitted). Mr. Lockhart must show more than some irritation, minor injury, or discomfort to show the officers' force was excessive. *See id.* Courts have granted summary judgment, even when a plaintiff's hands bleed, when there are no records of any long-term or permanent injury because of the handcuffing. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003*); see also Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (claim of nerve damage is not excessive force without evidence of permanent injury).

Here, Mr. Lockhart admits that he never saw a doctor due to his alleged injury. (Doc. 42, p. 15). Therefore, Mr. Lockhart has not presented any evidence of a long-term or permanent injury resulting from his handcuffing. Additionally, the dashcam videos of the arrest show that Officers Ware and Efram used de minimis force when arresting Mr. Lockhart and then arranging him in

the backseat of Officer Ware's patrol car. *See* Doc. 43-5, 16:08–21:05. "A *de minimis use of force* is insufficient to support a claim." *Chambers*, 641 F.3d at 906. The de minimis force the officers used, coupled with no evidence of any long-term or permanent injury to Mr. Lockhart, leaves no genuine dispute of fact about the reasonableness of the force Officers Ware and Efram used. Because of this, Officers Ware and Efram are entitled to summary judgment on Mr. Lockhart's excessive force claim.

### D. Section 1983—General Claims

Mr. Lockhart also presses claims against Officers Efram, Fine, and Adams for failure to intervene and against Officers Ware and Efram for an unreasonable search of Mr. Lockhart's vehicle. *See* Doc. 2, ¶¶ 127–28.[6] Despite referencing an unreasonable vehicle search in his complaint, Mr. Lockhart does not cite any caselaw or record evidence to support that claim in his response. For that reason, the Court will grant summary judgment on the unreasonable search claim. *See* Fed. R. Civ. P. 56(c), (e). Mr. Lockhart cited some evidence which he says shows Efram, Fine, and Adams failed to intervene, so the Court will consider that claim.

The Eighth Circuit has recognized a cause of action for failure to intervene in the excessive force context. *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). In other words, "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Id.* (quoting *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009)). But this claim fails if it is not clearly established that the force was excessive. *Id.* And there is "no duty to prevent the *constitutional* use of *reasonable* force." *McManemy v. Tierney*, 970 F.3d 1034, 1039 (8th Cir. 2020) (emphasis in original). Here,

---

[6] Mr. Lockhart did not separately set out these causes of action as he did with the failure to train, illegal stop, false arrest, and excessive force claims. Despite this, the Court will address these claims because Defendants seek summary judgment on those claims.

15

because Mr. Lockhart's claim of excessive force fails against Officer Ware, the failure-to-intervene claim against Officers Efram, Fine, and Adams also fails.

To the extent that Mr. Lockhart asserts a failure-to-intervene claim against the officers outside of the excessive force context, Mr. Lockhart has failed to satisfy his burden that his right is clearly established. The Eighth Circuit has "not recognized a duty to intervene to prevent [] constitutional violations" other than in the excessive force context. *Livers*, 700 F.3d at 360. Because of this, Mr. Lockhart cannot defeat qualified immunity as he cannot show that the duty to intervene applies outside the excessive force context. *See, e.g.*, *Kavanaugh v. Edwards*, 2023 WL 2078534, at *3 (E.D. Mo. Feb. 17, 2023) (citing *Livers*, 700 F.3d at 360). Defendants are entitled to summary judgment on Mr. Lockhart's failure-to-intervene claim.

### E. Arkansas Civil Rights Act—Equal Protection

Defendants separately seek summary judgment on Mr. Lockhart's equal protection claim brought under the Arkansas Civil Rights Act. As with the unreasonable search claim, Mr. Lockhart referenced an equal protection claim in his complaint, but does not cite to caselaw or record evidence to support his claim. For that reason, the Court will grant summary judgment on the equal protection claim. *See* Fed. R. Civ. P. 56(c), (e).

### F. Malicious prosecution

Mr. Lockhart alleges Siloam Springs and Mr. Bailey are liable for the state tort of malicious prosecution. (Doc. 2, ¶¶ 192–200). Mr. Lockhart only sued Mr. Bailey in his official capacity, so this is only a claim against Siloam Springs. *Parrish*, 594 F.3d at 1002. To show malicious prosecution, Mr. Lockhart "must prove (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages."

*Stokes v. Southern States Co-Op, Inc.*, 651 F.3d 911, 915–16 (8th Cir. 2011) (quoting *Sundeen v. Kroger*, 133 S.W.3d 393, 395 (Ark. 2003)). Defendants concede that Mr. Lockhart can satisfy the first two elements but dispute he can satisfy the last three. (Doc. 31, p. 24). The Court, based on the above reasoning about the reasonableness of Defendant Ware's stop, finds that Mr. Lockhart has raised a triable issue as to the absence of probable cause for the proceeding.

"Arkansas law still today defines malice as 'any improper *or* sinister motive for instituting the suit.'" *Stokes*, 651 F.3d at 917 (quoting *Cordes v. Outdoor Living Ctr., Inc.*, 781 S.W.2d 31, 33 (Ark. 1989)). Arkansas courts have also held "malice can be inferred from lack of probable cause." *Sundeen*, 133 S.W.3d at 147. Here, the Court has found that Mr. Lockhart raised a triable issue as to the absence of probable cause. If a jury finds that there is no probable cause, the jury can infer malice. Therefore, there is also a triable issue as to the malice element. *See, e.g.*, *Warren v. Goza*, 2022 WL 4843014, at *5 (E.D. Ark. Oct. 3, 2022) (malicious prosecution claim can go forward when there is dispute of fact about if officer had probable cause).

The final element of a malicious prosecution claim is damages. Although Mr. Lockhart did not explicitly say how the malicious prosecution caused him damages, he does explain that he "had to hire a lawyer and go to court." (Doc. 42, p. 18). This damages evidence is thin, but on a summary judgment motion "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted). A justifiable inference from "hir[ing] a lawyer" is that Mr. Lockhart had to pay that lawyer. Drawing that inference, the Court finds this is sufficient to raise a question of fact as to whether Mr. Lockhart was damaged. As a result of this analysis, Mr. Lockhart has a raised a genuine dispute of fact on his malicious prosecution claim, and Siloam Springs is not entitled to summary judgment on that claim.

Alternatively, Defendants argue they are entitled to statutory immunity on Mr. Lockhart's malicious prosecution claim. (Doc. 31, pp. 25–27). They point to state court cases interpreting Arkansas' immunity statute. *See, e.g.*, *Martin v. Hallum*, 374 S.W.3d 152, 158 (Ark. Ct. App. 2010) (citing Ark. Code Ann. § 21-9-301).[7] In those cases, however, the state courts explain that statute does not provide immunity from intentional acts. *See id.* at 160; *see also Sullivan v. Coney*, 427 S.W.3d 682, 685 (Ark. 2013). Malicious prosecution is an intentional tort. *Bates v. Simpson*, 2019 WL 1607320, at *10 (W.D. Ark. Apr. 15, 2019) (citing *Kellerman v. Zeno*, 983 S.W.2d 136, 141 (Ark. Ct. App. 1998)). Therefore, Defendants are not entitled to immunity on Mr. Lockhart's malicious prosecution claim.

### G. Civil Conspiracy and Abuse of Process

Mr. Lockhart also brought civil conspiracy and abuse of process claims. (Doc. 2, ¶¶ 155–64, 185–90). Mr. Lockhart withdrew those claims in his response. (Doc. 42, p. 22). The Court will dismiss those claims without prejudice.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 30) for summary judgment is GRANTED IN PART and DENIED IN PART. The only remaining claims are Mr. Lockhart's illegal stop and false arrest claims against Defendant Zachary Ware and his malicious prosecution claim against Siloam Springs. The Court will separately enter an amended final scheduling order setting a new trial date.

IT IS SO ORDERED this 22nd day of June, 2023.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE

---

[7] Defendants asserted this statutory immunity defense in their answer. (Doc. 10, p. 28).